Second case is Blomenkamp v. Blomenkamp, 5-17-0211. You'll note that we have one justice not joining us this morning. She will be accusing herself and another judge will be assigned it. And they will participate in the paper on your oral arguments. You ready? Let me close it again. May it please the court, counsels. My name is Martin Potter. I represent the appellant, Wells Fargo. In this case, the divorce court extinguished the mortgage of Wells Fargo. Determined that it had failed to perfect its security interests. Determined that it had failed to perfect a waiver of homestead. Determined that Wells Fargo had no legal or equitable interest in the property. And ordered the release of the mortgage. When I refer to the complaint, I am referring to Count 2 of the amended petition for dissolution. When I refer to Section 604, I am referring to 735 ILCS 5-2-604. When I refer to Rule 105, I am referring to Illinois Supreme Court Rule 105. Complaint in this case failed to adequately notify Wells of the relief that was granted. This being a case involving default, that renders the relief granted void. Now, I'm unaware of any case law that squarely falls on the specific facts that we have in this case. But I do think that some precedent exists, subjecting that when we look to what a complaint seeks and what relief can be granted, we can look to the complaint on the whole. In our briefs, we cite Rauscher v. Albert, which states, It is fundamental that a defendant is entitled to know the precise charge that is laid at his door, the nature and extent of the relief sought, the property that is or may be affected, and an opportunity to be heard. We also cite Park Avenue Lumber v. Hopperburg. For other reasons, but this case states, A decree in partition suit brought by a husband against his wife, for example, could not support a decree of divorce if the complaint did not state such a case and the prayer for relief did not cover it. Now, we also cite a case named Cook v. Burnett. Cook v. Burnett offers that relief beyond the abdominum is void. And when it does that, it cites Charles v. Gore. The very next sentence of Charles v. Gore is, Additionally, a judgment against a party upon a complaint that states no cognizable cause of action against that party is entirely void. That's 248-441, citing Hoopengarner v. Carrick. Lastly, we cite Gallipoli v. Orvilleur. Gallipoli v. Orvilleur, at the end of the analysis, stands for the proposition that we review the complaint in its entirety, on the whole, such that we ascertain whether we would be taking defendants by surprise. It states, The complaint is completely devoid of any allegations that the deed in question was induced by fraud or misrepresentation, and such an issue could only have come as a complete surprise to the defendants. Now, this concept of surprise is consistent with the purpose, requirements, obligations of Section 604 and Rule 105. The purpose and obligations of Section 604 are specific notice and choice. Specific notice, the precise charge laid at the door of the defendant, choice to defend or concede. This is also consistent with the letter of Section 604. Section 604 uses the word specific, and it uses the word specific for this very reason. If it were otherwise, the word specific would be rendered meaningless in Section 604. Now, my opponents argue that Wells Fargo is subject to a two-year limitation period in bringing its 24201 petition, and that it is required to make a showing of diligence. By my review, the focus on the conduct of the defendant loses sight of the requirements, purpose, the plaintiff's obligation under Section 604 and Rule 105. This is consistent with the opinions in Sarkisian v. Chicago Board of Education, People v. Vincent, and Warren County Commission v. Walters. Not just because the conduct of the defendant can have no bearing on what is otherwise a void order, but also because, specific to this case, it undermines the starting point. It undermines the obligation of the plaintiff to lay a precise charge at the door of the defendant, to pose a choice to the defendant. Now, plaintiff carries this requirement initially. Defendant is not required to guess what relief is being sought, and defendant is not required to appear in court to ask the court to tell it what relief is being sought. That takes us to the complaint in this case. The complaint in this case is untitled. That offers no specificity. It offers no direction as to what the nature of the claim is. It essentially consists of three paragraphs. The first paragraph indicates that Wells Fargo holds an interest in the property of the estate. That statement supports the validity of Wells Fargo's mortgage. It certainly does not provide specificity as to the nature of the claim. The second paragraph states Wells Fargo moves to foreclose the mortgage.  And again, does not provide specificity with respect to the nature of the claim. The third paragraph indicates that a proper resolution of all property issues cannot be had without adding Wells Fargo. Again, this does not provide specificity as to what's being requested. There is no offer of infirmity whatsoever in the complaint. Now we move to the addendum. The addendum asks the court to determine the interest of Wells Fargo, if any. It does not ask with specificity for a release of the mortgage. It does not ask for a determination that the mortgage is extinguished. It does not ask for a determination that the mortgage was failed to be perfected. It does not ask for a determination that the mortgage failed to perfect the waiver of homestead. It does not ask for a finding that Wells Fargo be determined to have no legal or equitable interest in the property whatsoever. That is not specific. If I were to file a complaint with no title, no cognizable claim, vague statements, no offer of infirmity, and I were to ask and couple that with a prayer that asks for ambiguous, contradictory relief, or even if for the purpose of this case and these facts we were to call it broad relief, it still would not be specific. It still would undermine the purpose and obligation of Section 604 and Rule 105. It would potentially invite misdirection and it would undermine the section because I could always avoid specificity by simply offering no cognizable claim, vague allegations, and again, for the purpose of this case and these facts, even if we call it broad, a broad request. And that would undermine the purpose of the section. Beyond this, the record itself does not support the ruling. Now, to be clear, I am offering this argument for two specific reasons. One, not only was my client not provided specific choice, specific notice and choice, but two, not only were we not provided specific notice and choice, but we could not be provided specific notice and choice. And two, I enjoy the benefit of a de novo review here. So, the record itself is devoid of any proof that would support that the mortgages extinguished, that would support that there was a failure to perfect the security interest, that would support a failure to perfect the waiver of homespend, that would support a determination of no legal or equitable interest in the property, and that would support a release of mortgage. Devoid of proof in support of that. Beyond this, the record itself contradicts the ruling. We have Teresa's financial statement at C33-37. This financial statement acknowledges the mortgage and payment thereof. We have a, at C55-60, a March of 2009 order sending a hearing on the payment of the mortgage amongst the Blum accounts. These are prior to the amendment adding count to. This is prior to the complaint. Subsequent to the complaint, we have the mortgage in the record. The mortgage contains paragraph 22. Paragraph 22 is the waiver, and the mortgage is signed by the Blum accounts. Too present, we have no showing of the theories, arguments, or proofs that support this ruling.  Finally, with respect to additionally address my opponent's argument about the imposition of a requirement of diligence or a two-year limitation, the Sarkissian case, the Vincent case, and the Warren County v. Walters case consistently and squarely resolve this issue, indicating that with respect to challenges as to voidness, no such diligence requirement is made, and no time limitation is imposed. Void is void. For the reasons stated, we ask that the relief against Wells Fargo be vacated and the matter be remanded for further proceedings. Thank you. Thank you. Are you both planning to argue today? Yes. Good morning. Good morning. May it please the court. Counsel. My name is Janie Desai, and I represent the appellee, Greg Blumingham. In addressing the appellee's argument regarding the default judgment being void, Your Honors, there is no contention by Wells Fargo that a summons was received by them at the time that the amended petition for dissolution was filed. The notice on the summons forewarned Wells Fargo that if an answer was not filed or an entry of appearance was not filed, then default judgment could potentially be entered against Wells Fargo. He wasn't asking this question. His concern is, he wasn't concerned not getting notice. He's concerned not knowing what the answer is. Well, I believe that Wells Fargo's brief also discussed not receiving proper notice of the default judgment potentially being entered. And that's the contention, is that there was an amended petition for dissolution that asked the trial court to ascertain each party's interest in real property. There was also foreclosure proceedings taking place concurrently. So, Wells Fargo was on notice that the appellees on the Blumingham were not admitting to having liability for the mortgage. The relief requested in the amended petition for dissolution was, again, for that termination of interest. Wells Fargo is now coming before the trial court in St. Clair County and arguing that they do maintain an interest in real estate. Upon receiving that summons, with the language of the amended petition for dissolution stating that the trial court could find that no interest existed in that property, Wells Fargo should have sought to protect the interest that they're now maintaining. I know Wells Fargo makes arguments that the petition for dissolution did not put them on notice that no interest could be found. However, the explicit nature of the relief clause, which is what's being contested here, asks the trial court to determine that interest, if any. Again, by that very explicit language, it is clear that the trial court could find that Wells Fargo does not have any interest. The Wells Fargo at the time of the summons was served upon them, and during the foreclosure proceedings, failed to litigate their own case in this matter. They failed to participate in the proceedings, and now, over four years after the default judgment was entered, in which the parties' assets, debts, were completely divided and assigned, they are now asking for the relief that they should have asked at the time. I believe that the appellant also goes into argument as to why their mortgage is legitimate and why they should have an interest in the property. Unfortunately, because they failed to participate in the proceedings at the time, those arguments don't really come up at this point. In order to even get into the door, Wells Fargo has to show that they demonstrated due diligence in, first of all, the litigation, and then having the default judgment vacated. Wells Fargo was sent a copy of the default judgment at the time it was entered, and even if they were not, they were made aware of the default judgment at the time that they moved to reinstate the foreclosure action. It wasn't until four months after they moved to reinstate the foreclosure action and a response was filed by my client that Wells Fargo actually filed a petition to vacate. Again, Wells Fargo has consistently, throughout these proceedings, failed to show the due diligence required under 214-01. While Wells Fargo thinks that they do not have to demonstrate that due diligence, they do because they can't show that the default judgment entered was actually void. The trial court, not finding that Wells Fargo held any interest in the real estate, then entered further orders ordering the parties to divide the assets, including the real estate, and have a title recently transferred over to my client. Upon Wells Fargo not executing the deed, an order was entered essentially executing that deed in favor of my client. Again, this does not go beyond the relief requested in the amended petition for dissolution of marriage. It's simply enforcement of the orders of the trial court. I believe that Wells Fargo cites numerous cases in a brief regarding specificity in relief requested in a complaint or a petition. Again, my client in the amended petition asked for all interest to be determined. If the trial court finds that no interest is determined, that is well within the language that was explicitly requested in the relief section. Again, if Wells Fargo believes that the amended petition was not specific in the relief requested, it could have filed a motion to dismiss in the trial court upon being served in 2011 with the summons. Again, there are procedural cases to have a pleading dismissed for lack of specificity, which, like I said, it closed down at the time that the summons was entered. For those reasons and the substance of the brief that we filed in this matter, we are asking this court to affirm the ruling of the trial court and to deny the relief requested by the appellant in this matter. Thank you. Thank you. I represent Teresa Blumenkamp, now known as Teresa Cape. She is also the appellee in this matter. I don't want to go too much over what Ms. Desai said because our arguments are in line in this case, but I do want to again reiterate to the court that Wells Fargo took no action in this matter for four years after the default was entered. In fact, in the foreclosure case that was also pending, they voluntarily filed a motion to dismiss that case with relief to refile. They took no action in the foreclosure case for four years after the entry of the default order. They simply waited too long. It goes back to the due diligence argument that Ms. Desai just made. Wells Fargo had the opportunity when the default order was entered in April of 2012 to bring in action at that time. They had 30 days in which to file something with the court. They failed to do that, again, for four years. They must show that the failure to defend or prosecute the lawsuit was the result of an excusable mistake and that the plaintiff acted reasonably under the circumstances and was not negligent. We feel that they have failed to show that there was an excusable mistake in this case as to why they did not bring their 2014-01 petition within two years. They haven't alleged any mistake or anything other than or to explain why they sat for four years before bringing this action. Wells Fargo argues that there would be no prejudice to the petitioner or respondent in the divorce action, that being the appellate here, if this case was remanded and judgment vacated in the divorce case. That's simply not the case. The judgment of dissolution that was eventually entered in this matter was entered into taking into account Greg Blumenthal receiving the real property without a mortgage. Debts were then divided accordingly. Assets were then divided accordingly. Wells Fargo is basically now asking that we return to a 2012 judgment and re-litigate a case where assets may no longer be in place. For example, if there was a retirement account that was held, perhaps that retirement account has been depleted or perhaps they commegled. Both spouses have remarried in this case. There would be substantial prejudice if we were to go back and try to re-litigate this. The mortgage is also held in Teresa's name. If this case were to be re-litigated or if the foreclosure case would proceed, it is of note to the court that Teresa did not receive the real property in the divorce. The real property was received by Greg. He has enjoyed the benefit of that real property since 2012. Teresa has never received notices from Wells Fargo advising her that there was a mortgage that existed, advising her of missed payments, advising her of anything that would be due and owing at that time. She had no reason to believe that this mortgage still existed and acted accordingly at the Greg Blumenthal camp. So there would be substantial prejudice to the parties if we needed to re-litigate this issue at this time. And again, I'd just like to briefly reiterate to the court that the prayer for relief in the amended petition filed by Mr. Blumenthal did ask the court to determine Wells Fargo's interest, if any. The court did just that. They determined that Wells Fargo had no interest in the mortgage. For that reason, we would ask that the court affirm the ruling of the child court in this matter. Any questions? Thank you. Well, let me start with my opponent's statement that we could have moved to dismiss unless there was a procedural basis for action to be taken. I submit that misses the point and the thrust of our argument. The conduct of the defendant does not trigger until 604 and 105 are satisfied. We don't look to the action or inaction of the defendant until such a time as the defendant is provided specific notice, a precise charge laid at his door, and choice. And that was not done here. So the fact that a procedural remedy may have existed really is not salient to the issues before this court. Discussions about the passage of four years are really discussions about diligence. And again, Sarkissian, People v. Vincent, and Warren County v. Walters squarely establish that with respect to challenges as to voidness, diligence is not required. And again, in this case, not only because the actions of the defendant would have no bearing on an otherwise void order, but also because we would be undermining the purpose and the obligation imposed by Section 604. There was a mention of a 214.01 petition should not be used to excuse one's own mistake. Again, this relates to, this imposition, this concept applies to 214.01 petitions that do not challenge voidness. There, the defendant's conduct matters. But when the initial order is void, when the initial, when our starting point is not met, the starting point being the obligation of the plaintiff, when that is not met, any relief granted exceeds the inherent authority of the court, and as such is void. There's mention to prejudice. So I have a few thoughts with respect to arguments about prejudice. My first thought is void is void. My second thought is we are here on a de novo review, and to my understanding, no one disagrees that this is a de novo review. We are here on a de novo review as a result of the evolution of Section 214.01 analysis. And where we may in the past have been looking at an abuse of discretion review, with respect to these challenges of voidness, pursuant to People v. Vincent and Warren County v. Walters, we have moved away from those equities in the context of a voidness challenge. It has not been eliminated, I will acknowledge that, but it is diminished. And that is why we are here on an abuse of discretion standard. So if we are talking about prejudice, first, the order is void. Second, the equities have diminished under the evolution of the case law. Third, I would argue that the prejudice to Wells Fargo exceeds the prejudice to the Blumenthal's, because the Blumenthal's enjoy a windfall on an agreement. They engaged in an agreement, they took benefit from the agreement, and now would enjoy a windfall on that if the result is that Wells Fargo's mortgage is extinguished. Wells Fargo would suffer great prejudice. With respect to references to conduct in the foreclosure, or lack of conduct in the foreclosure, I would note, and this is in the record, it's in plaintiff's motion 214.1 petition. May I finish the flagler? Sure. Thank you. That the dismissal was made with leave to reinstate, and it preserved the list pendants as if the case had never been dismissed. For those reasons, we ask that the relief grant be located in the matter be required. Thank you. The court will take this under advisement, and I assure you, we're in a new course. We're going to recess for a few minutes. We will let all other members join us, and we'll be back on the bench shortly. Thank you. All right. Thanks for waiting. Good morning. Good morning again to some of you. This case is Lakin v. Cases General Store 5-17-0152. Mr. Ward. May I please request counsel. Good morning. My name is Mike Ward. I'm the person on behalf of Cases General Store. We have briefed a number of issues on appeal, but I'd like to address the four specific issues that are raised on appeal. The first is the trial court's refusal to submit cases of contributory negligence instruction, the court's submission of an adverse influence instruction, and the court's ruling barring Cases from cross-examining the plaintiff on a job offer that he never received. I first address the issue of contributory negligence. Cases of contributory negligence instruction number 24, it would have submitted to the jury before he submitted the instruction, as far as the proper lookout and use of proper care. Under Illinois law, the standard is that if an instruction is supported by some evidence in the record, the instruction should be submitted. With respect to contributory negligence, the practice almost across the board is that the issue is a jury question, a fair question for the jury to decide. But even if the evidence is undisputed, if the parties dispute the import of the evidence, the instruction should go to the jury. In this case, the trial court erred as a matter of law in failing to submit Cases of Contributory Negligence Instruction. There was evidence from which the jury could conclude that there was contributory negligence on behalf of the plaintiff. There were four witnesses who testified, or I guess there were three witnesses who testified about the area of the fall, concerning the state of the area before the plaintiff's accident occurred. The first was Tammys Castillo, who was the plaintiff's girlfriend.  There was Carrie Tolbert, Casey's employee, who was carrying a tray. She walked through the area without incident. There was Paul Moran, who was the defendant in the case, who was also the consistent store manager at the time. He walked through the area also without incident before the fall. There was also the videotape evidence that the plaintiff submitted in his case, which showed those individuals walking through the area without incident. The plaintiffs themselves testified that the size of the spill was two to three feet in dimension, a very large spill, not a very small spill. From that evidence, the jury could conclude, a jury could have concluded that there was some contributory negligence on behalf of the plaintiff. In this case, the court deprived the jury the opportunity to evaluate the evidence beside that question  simply under the standard that the court is guided by, bound by, in addressing the submission of evidence, the submission of issues to the jury, that there is some evidence in the record that supports that the issue should be submitted to the court. An issue should only be taken away from the jury if all reasonable minds would reach the conclusion in this case that there was no contributory negligence on behalf of the plaintiff. It's not possible to say from the record that all reasonable minds would conclude that there was no contributory fault on behalf of the plaintiff in this case. It's simply not possible to say, based on the evidence, that all reasonable minds would conclude that there was no contributory fault on the plaintiff's behalf. The plaintiff's counsel will argue on this briefly that there was an admission by Paul Moran's that it was understandable why someone like the plaintiff would not have seen the spill. But that's not a judicial admission. It's an evidentiary admission. And even with that admission, the civil is not deprived cases of the right to submit that issue to the jury, contributory fault to the jury, where there is some evidence of contributory negligence. Here, Mr. Lakin testified and his girlfriend testified that they had experience with convenience stores, gas stations, that they were familiar with spills and the operation of stores. And Mr. Lakin himself testified that the spill in question itself was two to three feet in width. Under that evidence, there was simply no way for the court to say as a matter of law that there was no possibility that a jury could conclude that there was no comparative fault, no contributory negligence on behalf of the plaintiff. And for that reason, the court should reverse the trial court's judgment for Mr. Lakin for a new trial on all issues for failure to submit the issue of contributory negligence. I'll next address, Your Honors, the question of the court's adverse inference instruction, instruction number 22. There's a record there that's not the clearest record of what happened, why with respect to the videotapes that were or were not produced. It was Casey's position all along that all videotapes had been produced to the plaintiff. There was an initial discovery before present counsel was involved, plaintiff's counsel was involved, where Casey's produced its video in response to prior counsel, what happened or why things did not make it or whether or not there was an issue. The record's not clear on what happened, why there was a videotape that was not in the possession of the plaintiff's counsel at the time of trial. But the important question with respect to the adverse inference is the decision, Your Honors, of Adami versus Belmonte, that the instruction's not warranted where the evidence would have been favorable to the defendant in this case. There's simply no evidence that the video, in fact, the record discusses two videos. One was the video that would have been offered at the beginning of Casey's case. It defies logic that Casey's would offer a videotape at the beginning of its evidence that would have been adverse to it. Then there's the discussion with respect to the record between the court and counsel concerning the adverse inference instruction. There's the question of whether or not there was a third videotape, one that would have either shown the area of the still from a different angle or whether there would have been a longer time period involved. But again, there's simply no evidence. There's nothing on the record that suggests or confirms or establishes that if there was a third videotape that had not been produced, that that videotape would have been adverse to Casey's. There's no suggestion that a longer video or a video from a different angle would have established that Casey's caused the spill, was on notice of the spill, or failed to clean up the spill if it was on notice of the spill. There's simply nothing in the record that supports that type of conclusion that the evidence would have been favorable to the plaintiff and that it would have been intentionally withheld by Casey's. Again, the decision in Adami v. Belmonte that an adverse inference instruction should not be submitted to the jury where the evidence would have been favorable to the party in question. And there's simply no evidence here that if there was a third video or even a second video that was withheld, that it would have been adverse to Casey's. Again, it defies logic that Casey's would have offered a videotape at the beginning of this case that would have been favorable to the plaintiff. It simply defies logic that you would, as a trial lawyer, measure a strategy that you would offer evidence that would support the plaintiff's claim. The final point that I'd like to raise with the Court this morning is the question of Plaintiff's job offer. When he was deposed, Mr. Lincoln testified that he had received a job offer from Thomas Wuller for a position that would pay $75,000 a year. And that because of the injuries that he sustained in this slip and fall, that he was unable to pursue that opportunity that he had received from Mr. Wuller. After Plaintiff's deposition on defense counsel, deposed and sought and identified and located Mr. Wuller, Mr. Wuller testified that he didn't know Mr. Lincoln, he'd never offered a job to Mr. Lincoln, simply did not know the man. Following that, the plaintiff filed a motion of limine at the beginning of trial, and the plaintiff also withdrew his lost wage claim. And the Court sustained Plaintiff's motion of limine and barred defense counsel from addressing the fabrication and the lie that Mr. Lincoln made about his job offer on the grounds that the issue was collateral. I would submit to the Court that Mr. Lincoln's fabrication and his lie was not a collateral issue. An issue is collateral when it is not collateral if it goes to motive, interest, bias, or corruption. Here, the only person who was a witness to the slip and fall was Mr. Lincoln. His credibility was essential to the determination of liability for this claim. It's uncontroverted that Mr. Lincoln, in advancing his lawsuit against Casey, lied that he had received a $75,000 job offer. And because of the slip and fall, he could not pursue that opportunity. It's uncontroverted that Mr. Wuller deposed, that he did not know Mr. Lincoln, and that he never made an offer to Mr. Lincoln. That kind of evidence is powerful evidence. It's not collateral. Where the credibility of Mr. Lincoln as to the slip and fall is essential to his claim, he is the only eyewitness to the fall. He's the only person who could tell the jury what had happened. And he had lied in advancing his claim and pursuing a large lost wage claim, and he fabricated a job offer that he never received from a man who did not know, should not have been barred from admission into evidence, that the trial court should have permitted Casey to cross examine Mr. Lincoln on the fact that he had lied concerning his job offer. That would have gone to his credibility, it would have gone to his interest, his motive, his bias, and as the law says, to corruption. Simply put, the trial court erred and abused its discretion in barring that evidence, barring Casey from continuing to cross-examine Mr. Lincoln on his fabrication on his lie that he had received a significant job offer from a man who denied knowing him and who had denied ever making that offer. And for these reasons, I respectfully request the court to grant Casey a new trial on all issues. If the court has no further issues, I reserve the floor to you. Thank you, Your Honor. Thank you. May it please the court, I'm Roy Dripps for the plaintiff, James Lincoln, and I want to start off with an overview about this case. Casey's trial strategy was geared to its denial that even though its own employees were in the exact same area, none of them saw or could have seen the puddle on the floor. Casey's denied having notice, whether it was constructive or actual. The second amended complaint charged Casey's with negligence because it, quote, knew or should have known, unquote, of a dangerous substance on its floor. So the plaintiff claimed Casey's had actual or constructive notice. The answer denied this claim. And the evidence in the case was that no one had constructive notice, plaintiff or defendant. Casey's employees testified at trial that they didn't know anything was on the floor, even though they were in exactly the same area as the plaintiff. And in the case of Mr. Moretz, who is not only the assistant manager, but was Casey's corporate designee, he walked the exact same pathway that the plaintiff had and didn't see anything. Casey's trial strategy failed not because the plaintiff was able to prove constructive notice, but when the EMT, Tim Peters, testified that Casey's had actual notice, that one of the employees told him a customer had told the employee that there was a spill and Casey's didn't have time to clean it up. Now, I want to just kind of footnote that thought for a minute because I'm going to come back to it when we talk about the missing videos. But Casey's position now is that plaintiff should have seen what it denies that any of its own employees saw or could have seen. And even if plaintiff is held to some greater standard when he's a business invitee coming in to get a drink from their drinking fountain at a convenience store on his own, even if he's supposed to have some greater expertise, the defendant's employees have the same expertise. They're working and they're actually on the job. They're supposed to be looking for this stuff. The only difference is that unlike Casey's employees, plaintiff had no warning. And plaintiff's testimony was that he had no opportunity to see the spill before he fell. That testimony was unrebutted and uncontradicted. And defendant had the burden of proof on contributory fault. And in its briefs, it fails to cite to a single page of transcript or an exhibit to identify what act or omission by the plaintiff was negligent. Now, I want to talk a little bit about the waiver problem that Casey's has in this case before I move on to the merits of the contributory fault instruction. But defendant waived any claim of instructional error by failing to tender a proper instruction and by failing to object during the instruction conference on the same grounds now raised on appeal. Before instructional error will be considered, a party must tender the correct instruction. Defendant failed to tender a correct instruction. And the reason I say that is because defendant's instruction told the jury to assess contributory fault if they found that plaintiff failed to keep a proper lookout or failed to use proper care. Failed to keep a proper lookout doesn't tell the jury any fact to find. There is nothing in that instruction for the jury to find. Even worse, it assumes that a proper lookout would have revealed something the plaintiff could have avoided. And failed to use proper care simply asks the jury to find plaintiff negligent without a factual basis. This court, in the Howitt case, H-O-W-H-E, and it's discussed at length in the briefs, but it's at 305, Billette, 3rd, 183, found a virtually identical instruction to be reversible error. And so that's why I feel comfortable saying that the instruction problem they have is serious. This court already condemned the instruction that they tendered, and they didn't tender an alternate. In Howitt, this court reviewed the applicable authorities, including Supreme Court decisions, and held that the allegations in the instruction were impermissibly vague and conclusory. And what were at issue in Howitt were failed to keep a proper lookout, and failed to observe the conditions that are now present. Arguably better than the instruction tendered by the defendant in this case. Howitt held that giving that instruction was reversible error. Under Howitt, the defendant's tendered instruction in this case would also have been reversible error. At a minimum, it was not in proper form, and the trial court did not abuse its discretion in rejecting it. Defendant chose not to tender an alternate instruction. And the defendant's reply brief at page 6 argues for the first time in this case that contributory negligence is evidenced by his fault. Now, negligence is not a distinct concept from contributory negligence. The Supreme Court has made that clear. It's one animal. And if this court holds that simply having an accident is evidence of negligence for either side, we're going to do original summary judgments on almost all cases in which the defendant has no responsibility other than the fact that the plaintiff fell. The Supreme Court in Mort v. Walter, a 1983 case, said, the only circumstantial evidence that would support plaintiff's theory of the incident is the fact that the accident occurred. That fact in and of itself is early on insufficient to raise an inference of negligence. And to the same effect is, I think it's Publication Court v. Chicago River and Indiana Railroad Company, and it is well settled that a claim of negligence may not be inferred from the mere fact of an accident or injury. And that's what the defendant is arguing, though, the exact opposite of what the Supreme Court and what the appellate court have said in virtually identical circumstances. So the defendant failed to submit a proper jury instruction, and its claim of error is therefore waived. But Casey's claim fails on the merits, because the defendant failed to have an adequate factual basis in the record to submit contributory fault to the jury. Mr. Drix, was there a video that shows the entire fall? Yes. From beginning to end? There was one from a different angle that was not provided to the plaintiff. We found out about that in trial during a break in the defendant's case, where the defendant's video technician was queuing up their video, and this was during a lunch break, and Judge Mudge kind of looked up at the screen and said, I haven't seen that angle before, which piqued my interest, because I hadn't seen it before either. And, yeah. And I'll tell you a little bit more about the videos in a second, but one of the problems with the video not being produced to us is, Mrs. Tolbert described seeing herself walk care of a tray of sandwiches, which is nowhere in any of the videos, which shows us that they gave us a truncated version. They cut out, we had four minutes and I think ten seconds of video, a little over four minutes. She said, I saw five to ten minutes of video footage in preparation for my deposition. I saw myself carrying sandwiches. We believe that the video would have shown a customer spilling something, going up to a Casey's employee, saying, hey, I just spilled something, and then leaving, which is supported by what the EMT testified to. But the video didn't start until well after that. There was no spill in the four minutes that we were given, and it also did not show the plaintiff's fall. So, let me, I'll loop back to that in just a second, if that's answered your question. In this case, no one said the plaintiff should have seen the puddle. Now, Mr. Ward claimed that Mrs. Tolbert said it was three feet, or the plaintiff said it was three feet. That's after he fell. That's after he slipped, landed in it, and splashed it all over. So that has nothing to do with whether he should have seen it before or not. Nobody said it was three feet wide before he fell. Everyone has agreed that he or she did not see the liquid before the plaintiff fell, including the people who went right through the same area. The plaintiff's girlfriend, Mr. Morales, Mrs. Tolbert. They're all in the same area, and nobody sees it. Casey's Will 206-81 corporate designee, who is, in law, the voice of Casey's, Casey speaks for Mr. Morales at the corporate designee deposition. He admitted it was understandable that the plaintiff did not see the puddle. And he didn't just admit that someone might have pointed. He was asked, including the plaintiff, and he said yes. Now, whether that's an evidentiary admission or a judicial admission doesn't matter, because the defendant never introduced contrary testimony. So even if it's an evidentiary admission that they were free to contradict, they didn't. They never said, oh, we think the plaintiff should have seen it because. There's nothing like that in the record. The plaintiff came around a corner and fell. He fell immediately after turning. His testimony was, once I turned the corner, I fell. Plaintiff's view of what was immediately ahead of him around the corner was blocked by a Christmas display. And when Karen Neagle Tolbert approached the area, she looked from the other side of the store, from the kitchen area, and didn't have the same point of view as the plaintiff. So the defendant wants to say, well, three witnesses came through and didn't get hurt. Okay. There's a big difference between saying that and saying they didn't get hurt because they saw the substance, stepped around, and avoided it. Nobody said that. So what they did say was they didn't see anything on the floor. Neither did plaintiff. So there's nothing to charge the plaintiff with negligence in that respect. Defendant failed to request proportionate reduction of damages in its answer, and I'm not going to go into that, but what they pleaded were the same things condemned by the Howell case on proper lookout and proper care. And in Casey v. Baines, didn't the Supreme Court place the burden of pleading and proving contributory negligence on the defendant? And Casey's didn't either. Now, I want to go over one other thing before I move on. At the even more elemental level, defendant's theory of contributory fault was fundamentally flawed because defendant never specified the duty plaintiff owed. And we know that in any court, we have to show duty breach proximate cause. That goes for contributory fault as well. Defendant not only didn't discuss what duty plaintiff had, it's never identified the source of any duty in the record. And I want to discuss three Illinois Supreme Court cases, and they're discussed in my brief at page 25. Clarkson v. Wright says, a plaintiff has no duty to anticipate the negligence of another person. Ward v. Keymark, which is a seminal case on open and obvious, also says there is no duty to anticipate the negligence of another person. Defendant's argument hinges on the exact opposite, that somehow plaintiff had a duty to anticipate negligence by cases or by another customer. But Clarkson v. Wright and Ward v. Keymark foreclose that argument. The third Illinois Supreme Court case I want to talk about is Junker v. Ziegler, in which the Supreme Court held that a plaintiff's duty to protect himself only arises once the danger becomes known. And that's important. In Junker v. Ziegler, the people were duck hunting, there was a shot, and the Supreme Court said if that one had gotten the plaintiff, no contributory fault. But it wasn't the first shot that got him, it was the second shot. And he had an obligation to take cover after he heard the first shot. There was no first shot in this case. Plaintiff fell immediately when he rounded the corner, his view was obstructed by a Christmas display, and there is nothing in the record that would prove any duty on the part of the plaintiff to protect himself, much less show a breach of that duty. Now, the defendant's Rule 206-A1 corporate designee, who is Casey's voice, speaks for Casey and whose admissions are the admissions of the corporate defendant under the Rule. This is in the record at pages 106-107. No one intentionally put the liquid on the floor, plaintiff didn't put anything on the floor, plaintiff's girlfriend didn't bring anything into the store that could have been the liquid, plaintiff's girlfriend's drink was a soda which would have been sticky, this liquid was clear and not sticky, the corporate rep walked through the area just before the fall and didn't see the liquid. The corporate representative testified, as Casey's, if I didn't see something, it's understandable that no one else, including plaintiff, would see it. That admission was never contradicted, clarified, or explained by Casey's. So it doesn't matter whether it's evidentiary or judiciary. Remand would be futile in this case, because the other thing that the defendant said was, there's nothing that plaintiff should have done that he failed to do in order to avoid injury, and there's nothing that he did that he should not have done to avoid injury. I don't know how you get around that on a summary judgment motion on remand. When the corporation says, he didn't do anything wrong, he didn't fail to do anything he should have. So there was no error in refusing defendant's instruction on contributory fault. There's been no question on damages in this case, so even if the court thinks it should be remanded for trial on contributory fault, it should just remain on that issue and leave the damage award intact. Now, I'm not going to discuss the instruction issue on warrants, because Mr. Warren didn't address that. We started a little bit on 5.01, but this is a case that cries out for application of 5.01. We've got them providing truncated, shortened versions of videos. We've got them saying to the witnesses, here, watch this, it's stuff they never gave the plaintiff. And it's not just missing angles. It's minutes and minutes of footage that we didn't get. And they never offer an explanation. The only explanation was that the defendant's lawyer said, I don't know. Mr. Warren's cases weren't relaxed. Do you have any idea why cases didn't give those to us? He says, I don't know. So cases was given the opportunity to explain and didn't. So there was five to ten minutes of missing footage from various angles before plaintiff's fault in the sole custody of cases that should have been produced. The reason they didn't produce it is because, as I told Justice Chapman, we think that what happened was the video showed it was still on the floor and nothing was done at all to clean it up. No signs were put out before the plaintiff was injured. It was therefore within the trial court's discretion to submit it. The last thing I want to talk about was the defendant didn't make an offer of proof on the impeachment on the lost earnings. They didn't identify any questions to plaintiff or questions and answers to the witness despite a promise by defendant's counsel to make an offer of proof. They never did that. And so, even though I believe the brief discusses the collateral impeachment issue adequately, you don't need to get into that, I submit, because the failure to provide an offer of proof dooms their claim on this. And there's no evidence the plaintiff lied because there was no offer of proof. So for those reasons, I ask that the court affirm the judgment. Thank you. May I please have the court counsel? Plaintiff's counsel refers to the testimony of the EMT, Mr. Peters. He was the one who testified that there was someone who told him that there was a spill and had been failed to clean up. That testimony was not on dispute at the trial. Mr. Moran has denied that that was the case in his testimony. With respect to the duty question, with respect to Mr. Lagan's duty of care, instruction number 24 followed IPI 128.2. It was modeled and patterned after that instruction. And unlike the instruction that was found defective in the Howlett case, it included the statement of duty that Mr. Lagan failed to exercise ordinary care for his own safety. That language was omitted from the instruction in Howlett, which was ultimately the language that the court found to be, to render that instruction defective and prejudicial. It was, as I said, to include that language, failed to exercise ordinary care for his own safety. In this case, the instruction submitted by Casey, standardized case instruction number 24, did include that statement of duty as required by IPI 128.2. With respect to pleading, paragraph 3 of Casey's answer pleaded the defense of retributory negligence. With respect to the offer of proof, with respect to the job offer, the law is also that if the court clearly understands the evidence, no offer of proof is needed. And that's Dillon v. Evanson Hospital. In this case, Judge Mudge understood what the evidence was. Attached in response to Plaintiff's Martial Limit, it was the deposition of Mr. Waller. The plaintiff's death sentence was also part of the record. It was very, very clear on the record before Judge Mudge at that point, that Mr. Waller did not know the plaintiff, did not make a job offer. Under those circumstances where Judge Mudge was fully aware of what the evidence was on the job offer, there was no need under Illinois law for a formal offer of proof to be made. And that goes back to the credibility, as I mentioned in my opening argument, of Mr. Lakin. It is correct, as plaintiff's counsel says, that there was a theory of defense that there was no notice of a spill. Mr. Lakin, after the spill, describes the area of the puddle as two to three feet wide. If the liquid was truly at that dimension, then the jury should have been permitted to decide the question of juridical negligence. The question in terms of notice or lack of notice or whether he could not have done something further or did not see, goes to credibility. If the plaintiff was willing to fabricate a job offer from an individual that he never met, who denied knowing him, who denied making the offer, it followed that the jury would be free to conclude that he would be less than truthful in other aspects of his claim. Therefore, the evidence with respect to the trial courses and the bar of the cross-examination on the lost job offer was not collateral but goes to the heart of the case. It goes to Mr. Lakin's credibility. Again, he was the only individual who could tell the jury what had happened at the time of the fall. He was unequivocally caught in the fabrication in terms of the job offer. It was not collateral to the extent that the jury could conclude, based on that fabrication, that what else was Mr. Lakin not telling the truth about. And for these reasons, Your Honor, I would like to request the court to grant a new trial on all issues. Thank you. Thank you. Again, the court will take this under consideration and issue a ruling in due course. Our next case. We have Puma v. Nicholas L. Easley, 5S15-0178. Puma v. Nicholas L. Easley, 5S15-0178 Your Honor, who are you looking for? May it please the Court. Counsel. Assistant Appellate Defender and Prime Nominee of Nicholas Easley. This is Mr. Easley's appeal from a first-base defense along with a post-base post-condition petition. In the brief, we have two issues. If the State has conceded the second issue regarding the sentencing custody credit, Mr. Easley writes on the brief regarding that matter. The focus today, instead, will be on the first argument as to whether Mr. Easley stated the gist of a constitutional claim of ineffective assistance of counsel on this post-base petition. Here, the State filed a petition to revoke his drug court status, and Mr. Easley then consented to that revocation of his drug court status. The parties indicated that there was a joint recommendation of 18 years in the Illinois Department of Corrections. Pre-counsel added that the 18 years was actually suggested by Mr. Easley himself, and counsel had just relayed that number to the State. After accepting Mr. Easley's consent to the revocation of his drug court status and that negotiated 18-year sentence, the trial court advised Mr. Easley of his appeal rights. Among other rights, the court told Mr. Easley that he must file in this court within 30 days of today's date a written motion asking to have this court reconsider the sentence or to have the judgment vacated and for permission to withdraw his consent to the revocation of his drug court status. The court also stated if that motion is allowed, the sentence will be modified or the judge will be sentenced and judge will be vacated. It has been advised that Mr. Easley does file a pro se motion to reduce the sentence within 30 days. Unfortunately, Mr. Easley filed it under the wrong court case, so the wrong case number, and he later had to file an amended motion under the correct case. The State acknowledges that Mr. Easley did file a timely motion to reduce, that it was just under the wrong case number. Even so, the State filed a motion to dismiss that motion to reduce the sentence because pursuant to 119 Court Rule 604D, Mr. Easley did not file a motion to withdraw his guilty plea and rather he only sought to reduce the sentence, which was a fully negotiated sentence. Specifically at the hearing on the State's motion to dismiss, Mr. Easley told the court that his plea counsel had only informed him that he had to file a motion to reduce, not a motion to withdraw. The trial court indicated to Mr. Easley that whether plea counsel told you the right information or the wrong advice was not before it, that the only matter before it was the State's motion to dismiss. Afterwards, the trial court agreed with the State to dismiss Mr. Easley's motion to reduce. As a result, Mr. Easley did not directly appeal that case. Subsequently, Mr. Easley filed a pro se motion, or a pro se post-conviction petition, alleging among other matters ineffective assistance of plea counsel for one, abandoning him at the negotiation process and two, for misadvising him regarding his post-plea matters. The trial court summarily dismissed this petition as frivolous and patently without merit in a written order. In that written order, among other matters, the court stated that Mr. Easley's claim of ineffective assistance of plea counsel had to be accompanied by a claim of innocence or the articulation of a plausible defense and that Mr. Easley was advised by the court to file a motion to reconsider within 30 days of the judgment. The problem in this appeal is that the trial court dismissed Mr. Easley's pro se post-conviction petition at the first stage, even though he alleged the gist of a constitutional claim of ineffective assistance of plea counsel. At the first stage of the post-conviction proceeding, most petitioners, like Mr. Easley, are indigent, they proceed pro se, and, like Mr. Easley, they have little to no legal expertise. And that's seen in this case. Mr. Easley, I think, states that he's learning, he's trying, he didn't know better, and you can see that within the record in this case. And with that in mind, the Post-Conviction Hearing Act and the Supreme Court have set the standards here very low. It's a low standard at the first stage. And thus, at the first stage, the petitions can only be dismissed if there's no ongoing basis in law or in fact. And as such, factual allegations must be liberally construed, and petitioners may only state the gist of a constitutional claim, meaning that they don't have to claim sufficient facts of a legal claim or know the exact legal theory that they're arguing. It's just the gist of a constitutional claim. And even if one claim meets that burden, the whole petition must move forward. But here, Mr. Easley just needs to show that no burden, that pre-counsel's performance falls below the objective standard of reasonableness, and that it's arguable that he was prejudiced. Specifically focusing on Argument 1b, Mr. Easley alleged that pre-counsel was ineffective for misadvising him regarding post-claim matters. This resulted in Mr. Easley losing his right to a direct appeal, and as the court knows, a post-conviction proceeding is not a substitute for a direct appeal. As we know, there's three judges in a direct appeal that determines the case. In a direct appeal, the defender or the petitioner can allege non-constitutional matters as well, so it's not a substitute. And here the issue is simple. Mr. Easley alleged that pre-counsel told him just to file a motion to reduce, not a motion to withdraw. And even though pre-counsel fully knew that this was a fully negotiated sentence, this was legally wrong advice. And the record shows that trial counsel also exaggerated this mistake by misadvising him during his appeal rights. Trial counsel also informed him that he could file one or the other, a motion to reduce or a motion to withdraw his A case. And how does the record show that? Which part, Your Honor? So, the record shows that the trial court misadvised him in the- Oh, the trial court. I thought you said counsel. No, the trial court. Whatever trial counsel told him is off the record. And that's because both the trial court and pre-counsel misadvised him. As a result, he lost his right to a direct appeal. This is clear prejudice. This isn't just a petitioner saying, I wouldn't have pled guilty if I knew. This is a clear result, a clear consequence, a clear prejudice here. And as I stated before, Mr. Easley alleged that this misadvice happened between him and his state counsel. This is, of course, off the record in a private conversation between an attorney and his client. But the implications here are huge. He lost that big right of a direct appeal. And thus, we simply ask that this court remand Mr. Easley's case to the trial court, allow it to proceed to the second stage proceedings so that the state can become involved and move forward. However, at that time, Mr. Easley will have an attorney. He'll be able to better legally shape his claims and have that assistance with him. Are there any other questions? No, thank you. We're about out of time. Mr. McNeil? May I please record, counsel? I'm Luke McNeil. I'm with the appellate prosecutor's office from the 4th District. As for the argument that counsel abandoned defendant during the plea negotiation, the record contradicts that claim. Counsel clearly knew about the case. We know this because counsel wanted to state and make sure it was on the record that he had discussed possible defenses with defendant. This shows that he was familiar with the defendant and the circumstances of this case. He was present during the plea hearing. He did mention that defendant himself first suggested the 18-year sentence. Do you see the problem with that? Where the defendant is the one that comes up with what is considered an appropriate time that might be negotiated, rather than the attorney advising him? The way I read the record is that I took it as an aside more than the defendant handled his own negotiations. He didn't say that. We're talking about advice that the counsel gave him. I think that the only reason this was mentioned in a single phrase to the trial court was for more insurance. The trial court will accept this as a voluntary and known plea by defendant if he was the one who first suggested the term and ultimately agreed to plead guilty for it. It's not inappropriate in and of itself where defendant has to input a suggestion. Obviously, but the way I read what is in the record, it sounds like there wasn't any further guidance with respect to what might be an appropriate time. I know, of course, we wouldn't have that. That might call for or win support to an evidentiary hearing, but the record contradicts. If the exchange went as the defendant alleges in his post-conviction position, the defendant alleges, hey, the counsel came in and said, you're on your own, I'm only here because I was appointed, and you better come up with your own sentence or you're going to get the maximum. Any reasonable person in the defendant's position would take that as a threat or at least a force or coercion in that when the trial court goes through its usual admonishments, usual questions for guilty plea, defendant said he wasn't threatened, he wasn't forced, he wasn't coerced. Any reasonable person in the defendant's position, if it went like that, if his counsel, that's what he said, the defendant would say, oh, actually, I was kind of painted into this corner. I was told to make my own offer. There was nothing like that on the record. The record contradicts that. It says you were entered into this plea voluntarily and knowingly. And the only support to show that this abandonment issue is such a high hurdle, the only authority the defendant cites to is People v. Richardson, a First District case which ultimately held that counsel didn't abandon defendant. The relevant dissent in that case, the First District, though, cautioned that the dissent's unnecessary rhetoric distanced the talented and dedicated lawyers who represent indigent defendants in this state. And they require compelling justification for showing abandonment. Here the record contradicts. What stage was that? Was that in the first stage? I think Richardson was a direct appeal. Okay. I think I'm mistaken, but I think it was a direct appeal. Here the defendant sort of latches onto this statement that counsel, hey, defendant actually suggested this sentence first. Apparently he shouldn't have said that because that gives an opening for this abandonment argument. However, reading the record in context, the trial counsel was simply mentioning that to show that defendant was a willing participant and this was a knowing and voluntary plea. After the ineffective assistance argument for giving wrong advice regarding post-plea motions, here there simply is no arguable basis for prejudice. We know that because at no point in the proceedings does defendant ever request or indicate or suggest that he wants to file a motion to withdraw his guilty plea. It would have been really easy for him to say in his post-conviction petition, I wanted to file, I wanted to withdraw, I wanted to start over. He didn't. He only said that he wanted a shorter sentence. Of course, anybody serving a sentence wants a shorter sentence. There was no skin in the game for him to file a motion to reduce. The worst that can happen is that it gets denied. There's nothing in this court shouldn't assume that a defendant automatically wants to withdraw his guilty plea. Then he has something to lose. Here his sentence was directed in the middle of the sentencing range. He wished a longer sentence and there was, of course, no dispute that he was guilty of this and there was no viable defenses. Defendant very well could have received a longer sentence. So it shouldn't be assumed that the defendant wanted to file a motion to withdraw absent a statement of saying such or at least a suggestion. And the trial court was in no position or had no obligation to put these dots together, connect these dots that defendant saying, well, I wanted the shorter sentence so I asked counsel how to get that shorter sentence and he said file a motion to reduce. Trial court was under no obligation to then fashion that into a defendant claiming that he wanted to file a motion to withdraw. However, the trial court did mention, even if we assume a further hypothetical, that the defendant did get erroneous advice from counsel and that defendant did actually want to file a motion to withdraw. Still, there's no arguable prejudice the outcome of the proceedings would have been exactly the same. How do we know that? The trial court specifically noted in its findings that it would have denied any motion to withdraw a guilty plea and that would have been the proper decision in this court. When People v. Feldman cited in my brief stated that a plea to withdraw a guilty plea should be granted only to correct a manifest injustice such that the plea prevented on misapprehension of the facts of the law, there's doubt as to the guilt of the defendant, the defendant has a meritorious defense, or the end of justice would be better.